File Name: 06a0557n.06

Filed: August 3, 2006

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 05-6315

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

ANGELA HENDERSON,

    Plaintiff-Appellant,

v.                                      ON APPEAL FROM THE
                                             UNITED STATES DISTRICT
MICHAEL REYDA, TIMOTHY HUTCHISON,    COURT FOR THE EASTERN
KNOX COUNTY, TENNESSEE, and    DISTRICT OF TENNESSEE
HARTFORD INSURANCE COMPANY,

    Defendants-Appellees.

_____/

Before:      MARTIN, NORRIS, and McKEAGUE, Circuit Judges

       BOYCE F. MARTIN, JR., Circuit Judge. Angela Henderson appeals a number of the district

court's decisions in her section 1983 case against Knox County Deputy Sheriff Michael Reyda,

Knox County Sheriff Timothy Hutchison, Knox County the entity, and the Hartford Insurance

Company (as Insurer and Surety for Reyda and Hutchison), including the dismissal of all causes of

action at summary judgment. Henderson's suit stems from a confrontation between Ms. Henderson

and Deputy Reyda at the Three Ridges Golf Course in Knoxville, Tennessee. Based on the

following, we affirm the dismissal of Henderson's suit.

I.

      As the district court stated:

This case arises from an incident which occurred on December 30, 2002, at the Three Ridges Golf Course in Knox County, Tennessee. Defendant Reyda was on patrol as a deputy sheriff with the Knox County Sheriff's Department. At approximately 10:30 p.m. that evening, Reyda saw a pickup truck parked at the closed gate of the golf course and became suspicious. The golf course was closed and there had apparently been some recent break-ins and vandalism. Reyda approached the truck on foot with his flashlight and then climbed over the gate and began walking toward the golf course.

About that time, plaintiff Angela Henderson came running toward the truck from the golf course. Reyda questioned her about what she was doing and whether she was alone. Henderson told Reyda that she was alone and she was taking a walk. Reyda did not believe Henderson's explanation and asked for her identification. He then grabbed her arm in an attempt to escort her back to the truck at which point she resisted. At this point, the two versions of the facts diverge. Reyda testified that Henderson slapped him on the forehead. Henderson testified that Reyda grabbed her sweatshirt hood, dragged her down the hill and then slammed her to the ground. However, it is undisputed that Reyda handcuffed Henderson's arms behind her back, walked her to the vehicles, and placed her on the hood of her truck. It is also undisputed that Henderson had an object in one of her hands and that Reyda hit her hand or her back to force her to release the object, which turned out to be a set of keys.

Henderson claims she was taken to the Knox County Detention Facility and held for over nine hours before she was released on bail. [Henderson] was initially charged with assault, possession of marijuana, and possession of drug paraphernalia. Following a preliminary hearing on March 19, 2003, the Knox County General Sessions Court bound the assault charge over to the Grand Jury and the drug charges were dismissed. [Henderson] was indicted by the Grand Jury for assault on Officer Reyda and criminal trespass. Following a jury trial on December 15 and 16, 2003, in the Knox County Criminal Court, Henderson was acquitted of the criminal charges against her.

Dist. Ct. Opn. of June 13, 2005 at 2-3 (footnote omitted).

Henderson filed this action on December 29, 2003 against Knox County, Tennessee and against Sheriff Hutchison and Deputy Reyda in both their official and individual capacities. Reyda and Knox County moved for summary judgment on March 11, 2005. On June 13, 2005, the district court granted summary judgment in favor of Reyda and Knox County on Henderson's federal

claims. Lacking supplemental jurisdiction from those federal claims, the district court remanded her remaining state law claims to state court. Henderson filed motions with the district court for relief from judgment, to amend the complaint, and for disqualification of the district judge for his reliance on extra-judicial personal knowledge. The district court denied each of these motions. Henderson filed her timely appeal to this Court on August 10, 2005.

II.

A. <u>Dismissal of the Fourth Amendment excessive force claim</u>

Henderson appeals the district court's decision to fail to construe her complaint as having pled a section 1983 claim for excessive force. The district court did so in a footnote:

> The Court notes that, while the facts set forth in the complaint could possibly be construed to allege a § 1983 claim for excessive force, the plaintiff has not pled such a claim, nor does she characterize her case as including such a claim in her responsive pleadings to the pending dispositive motions. The Court must assume that the 21 claims asserted by plaintiff were deliberately chosen by her and her counsel, who is experienced in such matters, and the Court will accordingly decline to construe the complaint as asserting a claim not pled. See Fed. R. Civ. P. 8(a).

Dist. Ct. Opn. of 6/13/2005 at 7 n.3.

This Court reviews a dismissal for failure to state a claim de novo. *Kottmyer v. Maas,* 436 F.3d 684, 688 (6th Cir. 2006). Rule 12(b)(6) permits a district court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6) "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In considering whether to grant a defendant's motion to dismiss pursuant to Rule 12(b)(6), a district court must accept as true all the allegations contained

in the complaint and construe the complaint liberally in favor of the plaintiff. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). A district court need not, however, accept as true legal conclusions or unwarranted factual inferences. *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).

In Henderson's initial complaint, she listed three federal claims in Counts Fifteen, Sixteen, and Seventeen. None of these three claims specifically enumerate a section 1983 claim based on excessive force. However, Henderson argues that in Count Fifteen, covering "Fifth and Fourteenth Amendment Due Process of Law," she sufficiently pled an excessive force claim by accusing Reyda of using "unlawful force against [Henderson] and violat[ing] [Henderson's] clearly established rights guaranteed him [sic] pursuant to Fifth and Fourteenth Amendments to the United States Constitution**.**" Based on this assertion, we hold that the district court did not err in failing to construe the pleadings as Henderson requests based on that language.

B. Summary Judgment Standard

This Court reviews a district court's decision to grant summary judgment de novo. *Bennett*, 410 F.3d at 817. Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The burden is generally on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by 'showing -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case.'" *Bennett*, 410 F.3d at 817 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "In reviewing a summary judgment motion, credibility judgments and weighing of the

evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party." *Id*. (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "Thus, the facts and any inferences that can be drawn from those facts, must be viewed in the light most favorable to the non-moving party." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

C. Henderson's Due Process Claim

The district court granted summary judgment in favor of Reyda on Henderson's due process claim. The district court's reasoning was that Henderson had no procedural or substantive due process claim because the alleged injuries against her should be construed under the Fourth Amendment, not the Fourteenth Amendment's due process clause. "*[A]ll* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). In this case, Henderson's due process claim was based on Reyda's "unlawful force" and, therefore, must be analyzed under the Fourth Amendment rather than the Fourteenth Amendment.

> While excessive force claims are often best analyzed under the Fourth Amendment's protection against unreasonable seizures, *Graham v. Connor*, 490 U.S. 386, 394 (1989), the Supreme Court has recently cautioned that not "all constitutional claims relating to physically abusive government conduct must arise under either the Fourth or Eighth Amendments[.]" *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). Instead, the Court noted that "*Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Id*. Thus, while *the Fourth Amendment "objective reasonableness"*

> *analysis should be used in excessive force cases involving searches and seizures*, where there is no search or seizure, the Supreme Court has held that the substantive component of the Fourteenth Amendment's due process clause is the most appropriate lens with which to view an excessive force claim. *County of Sacramento v. Lewis*, 523 U.S. 833, 843-44 (1998).

*Darrah v. City of Oak Park*, 255 F.3d 301, 305-06 (6th Cir. 2001) (emphasis added).

Based on this Court's holding in *Darrah*, the district court failed to address the question of whether Henderson's claim arose out of a search or seizure. Despite this oversight, the district court's outcome was ultimately correct. This case clearly stems from Reyda's seizure of Henderson's person while investigating potential criminal acts. Therefore, Henderson's substantive due process claim must be analyzed under the Fourth Amendment's "objective reasonableness" standard. *See Graham*, 490 U.S. 386. We believe the district court was correct in dismissing Henderson's claims as separate due process violations under the *Fifth* and *Fourteenth* Amendments. The claims Henderson brought against Reyda involving "unlawful force" or "excessive force" should be analyzed under the Fourth Amendment as instructed by *Graham v. Connor*. However, as stated above, Henderson did not plead or argue to the district court that Reyda's use of force violated her Fourth Amendment right to be free from unreasonable seizure.

D. Henderson's Unlawful Arrest and Seizure Claim

The district court dismissed Henderson's section 1983 suit against Reyda for unlawful arrest and seizure based on collateral estoppel on the issue of probable cause. A preliminary hearing was held during Henderson's criminal trial for assault, and the court found that Reyda had probable cause to arrest Henderson for assault based on Henderson striking Reyda after Reyda had grabbed

her arm. The district court held that such a finding collaterally estopped Henderson's 1983 suit for unlawful arrest because if there was probable cause for the arrest, the arrest was therefore legal.

After reviewing the decision of the district court, we hold that the district court's dismissal based on collateral estoppel was correct and any further discussion on this issue would be duplicative of the analysis conducted by the district court.[1]

E. Henderson's Equal Protection Claim

Henderson asserts a claim of a violation of the Equal Protection clause based on Reyda's failure to follow T.C.A. § 40-7-118(b)(1). That Tennessee law states "[a] peace officer who has arrested a person for the commission of a misdemeanor committed in such peace officer's presence . . . shall issue a citation to such arrested person to appear in court in lieu of the continued custody and the taking of the arrested person before a magistrate." T.C.A. § 40-7-118(b)(1). Henderson claims she was not provided equal protection under this Tennessee statute and, therefore, brings a section 1983 suit.

The district court, however, dismissed Henderson's claim because section 1983 requires some constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Henderson argues on appeal that section 1988 expands the scope of section 1983 beyond those rights protected in the Constitution to encompass any civil rights violation protected by state statute as well. The district court addressed this argument in its opinion:

---

[1]Henderson also argues in her brief that the district court erred in dismissing her malicious prosecution claim based on collateral estoppel. It does not appear from her original complaint that she pled malicious prosecution. Additionally, the district court did not refer to a malicious prosecution claim in its discussion of collateral estoppel.

Finally, with respect to plaintiff's argument that 42 U.S.C. § 1988 provides a federal remedy for violation of plaintiff's rights pursuant to Tennessee law, it is well settled that § 1988 does not create federal causes of action for violation of civil rights. *Moor v. County of Alameda*, 411 U.S. 693, 703-704 (1973) ("we do not believe that the section [1988], without more, was meant to authorize the wholesale importation into federal law of state causes of action"); *Monell* [*v. Department of Social Servs. of City of N.Y.*], 436 U.S. [658] at 701 n.66 ("42 U.S.C. § 1988 cannot be used to create a federal cause of action where § 1983 does not otherwise provide one"); *Hall v. Wooten*, 506 F.2d 564, 568 (6th Cir. 1974) ("section 1988 does not create federal causes of action for violation of civil rights").

Dist. Ct. Opn. of June 13, 2005 at 11-12.

Henderson's brief argues that the question of whether 1988(a) expands state civil rights laws to a federal cause of action is one of first impression before this Court. Contrary to Henderson's argument, section 1988(a) only speaks to damages brought under an already valid section 1983 claim. Therefore, Henderson's claim must first survive as a 1983 claim before 1988 becomes relevant. Under the Equal Protection clause, states may not make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference. *Vacco v. Quill*, 521 U.S. 793, 799 (1997). Henderson has failed to show how her situation fits in any of these categories. Henderson is arguing that she has a fundamental right to be served with a citation rather than subject to a full arrest for a misdemeanor. There is no basis in federal law for this argument without some showing that it is discriminatorily enforced, which Henderson has not made.

Fundamental rights are "the basic civil rights of man." *Skinner v. Oklahoma*, 316 U.S. 535 (1942). These rights include the right to procreate, *id.*, the right to vote, *Harper v. Virginia Bd. of Elections*, 383 U.S. 663 (1966), access to the judicial process, *see, e.g., Boddie v. Connecticut*, 401 U.S. 371 (1971), and the right to interstate travel, *Shapiro v. Thompson*, 394 U.S. 618 (1969). While

the Supreme Court has recognized that "[t]he [Fourth] Amendment protects the fundamental 'right of the people to be secure in their persons, houses, papers, and effects,' against all official searches and seizures that are unreasonable," *Arizona v. Evans*, 514 U.S. 1, 18 (1995) (Stevens, J. dissenting) (quoting U.S. CONST. amend. IV), this fundamental right has not been expanded to a choice of written citation rather than full arrest once the officer has probable cause to make that arrest. Therefore, we affirm the district court's decision, dismissing Henderson's claim under the Equal Protection clause.

F. Henderson's Claims against Knox County

The district court also granted summary judgment in favor of Knox County as to all of Henderson's causes of action against the county for two reasons. First, because the district court had dismissed all of Henderson's underlying actions against Officer Reyda, she could not succeed against the entity employing Reyda, Knox County, for his actions. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("neither *Monell* . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm."). Second, the district court held that Henderson failed to demonstrate a policy or custom of Knox County which led to the unconstitutional conduct, a requirement for a section 1983 suit against an entity. *Monell*, 436 U.S. at 691. Because we have affirmed the district court's decision in dismissing Henderson's underlying federal claims against Reyda, we are compelled to affirm its decision dismissing the claims against Knox County as well. Therefore, we need not address the question of whether Henderson failed to demonstrate a policy or custom which led to the unconstitutional conduct.

G. Evidentiary and Procedural Issues

Henderson raised on appeal a number of evidentiary and procedural issues which she felt were wrongly decided by the district court. Because we have affirmed the district court's dismissal of all of Henderson's federal claims, these remaining issues are best left to the discretion of the state court, as the district court has declined to grant supplemental jurisdiction in this action.

III.

Based on the discussion above, we affirm the district court's decision dismissing all of Henderson's federal claims in this action. Without these causes of action, the federal courts no longer have jurisdiction over this dispute and, therefore, we REMAND her remaining state claims to Tennessee state court.[2]

---

[2]There was a pending motion before this Court filed by Timothy Hutchison and the Hartford Insurance Company to dismiss them as appellees in this matter. Because we have affirmed the district court, that motion is now moot.